IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CRISTINA WOODARD<br><br>Plaintiff,<br><br>vs.<br><br>THE BANK OF NEW YORK MELLON;<br>et al.,<br><br>Defendants. | Case No. 6:18-cv-02072-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Plaintiff Cristina Woodard brings this action challenging the foreclosure sale of real property in La Pine, Oregon, following the judicial foreclosure of the property. Defendants are the Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-26 ("BNYM"), Specialized Loan Servicing, LLC ("SLS"), and Malcom ♦ Cisneros, A Law Corporation ("MC"). Defendants move to dismiss the Complaint. For the following reasons, Defendants' BNYM and SLS's motion is GRANTED and MC's motion is GRANTED in part and DENIED in part.

## BACKGROUND

In 2006, plaintiff executed a Note for $220,000 secured by a Deed of Trust on real property located in La Pine, Oregon. Compl. Ex 3.[1] Plaintiff defaulted on the loan, and in April 2014 BNYM filed a foreclosure action on the Note and Deed of Trust in state court, Case No. 14CV0239FC, (the "Foreclosure Action"). *See* Foreclosure Action Docket, Doc. 18 Ex A. SLS was servicing the loan for BNYM at the time, and MC is the law firm that initiated the Foreclosure Action on behalf of BNYM.

Plaintiff was personally served with the Complaint in the foreclosure action in April 2014, received mail service of a Motion for Default in May 2014, and mail service of a Motion for Judgment of Default in November 2015. Doc. 18 Ex C, D, F. She failed to appear in the action and was defaulted. The court entered a General Judgment of Foreclosure on November 25, 2015. *See* Foreclosure Action Docket, Doc. 18 Ex A; General Judgment of Foreclosure, Doc. 18, Ex. G. The Sheriff's Return Writ of Execution filed the foreclosure action states that Plaintiff was served by mail with the Notice of Sale in June 2018. Doc. 18 Ex. H. The judgment was executed and the property sold to BNYM on August 2, 2018. *Id.*

Plaintiff filed this action in December 2018, asserting claims for a declaratory judgment (claim 1); unjust enrichment, fraud, and conversion (claim 2); violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, (claim 3); conversion (claim 4); and breach of good faith and duties of care (claim 5). Plaintiff

---

[1] Defendants BNYM and SLS's Request for Judicial Notice (doc. 18) is GRANTED, and the Court takes judicial notice of the documents related to the Foreclosure Action, attached as exhibits to defendants' request, and of the letters attached as an exhibit to the Complaint (doc. 1)

alleges that she sent letters, beginning in April 2018, and made phone calls in an attempt to work out a loan modification and determine whether BNYM and SLS had the right to foreclose on the loan, but never received a response. She also alleges that she did not receive notice of the foreclosure sale. Plaintiff asserts that the foreclosure sale was illegal because she did not receive notice of the sale and that defendants had no standing to initiate foreclosure under the Uniform Commercial Code and FDCPA.

## STANDARDS

### I. *Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). The court "accept[s] as true the factual allegations in the complaint." *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008).

### II. *Motion to Dismiss for Improper Service Under Rule 12(b)(5)*

Rule 12(b)(5) provides that a defendant may move to dismiss an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984).

But "without substantial compliance with Rule 4, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Direct Mail Specialists*, 840 F.2d at 688 (internal quotation marks removed).

Once service of process is challenged, "[i]t is plaintiff's burden to establish the validity of service of process." *Roller v. Herrera*, No. 3:18-CV-00057-HZ, 2018 WL 2946395, at *2 (D. Or. June 11, 2018). The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion. *See Lachick v. McMonagle*, No. CIV. A. 97-7369, 1998 WL 800325, at *2 (E.D. Pa. Nov. 16, 1998) ("Factual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony.").

If a court concludes that service was improper, "[t]he choice between dismissal and quashing service of process is in the district court's discretion." *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). "Service will ordinarily be quashed and the action preserved where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.'" *Roller*, 2018 WL 2946395, at *2 (quoting *Bravo v. Cty. of San Diego*, No. C 12-06460 JSP, 2014 WL 555195, at *1 (N.D. Cal. Feb. 10, 2014)). The district court also has the discretion to extend the time for service outside of the 90-day period provided for in Rule 4. *Id.* (citing Fed. R. Civ. P. 4(m)).

### III. *Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)*

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks

sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). However, the court need not accept unsupported conclusory allegations as truthful. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

Before turning to the motions to dismiss, the Court will summarize plaintiffs five claims for relief.

Plaintiff's first claim, "Declaratory Judgment-Standing," asserts that defendants had no standing or right to initiate or hold the foreclosure sale, and appears to argue that defendant had no standing because they were not the Lender or acting on the Lender's behalf and, therefore had "no economic or beneficial interest in any Note, mortgage, or deed of trust." Plaintiff also asserts that "[e]ven if one of the listed Defendants can claim to be the 'Lender,' . . . Defendant no longer owns or has full dominion over Plaintiff's Note." Compl. at ¶ 55. Finally, plaintiff appears to assert that any transfers of the loan were invalid. Plaintiff asks for a declaratory judgment identifying the "lawful holder of the Note and proper beneficiary/Owner under the Deed of Trust." *Id.* at ¶ 64. Plaintiff also "asks the Court to unwind the judicial foreclosure sale until the Defendant can substantiate that it has the right to enforce the operative security instruments in this case." *Id.*

Plaintiff's second claim, "Unjust Enrichment and Fraud and Conversion," alleges that because defendants lacked authority or the right to enforce the note or deed of trust, they were unjustly enriched through the foreclosure and purchase of the property. Plaintiff also alleges that, through the foreclosure sale, defendants converted the property "for [their] improper and unlawful benefit." *Id.* at ¶ 66. Finally, plaintiff alleges

> If and [*sic*] it is a strong possibility that Defendant cannot show its right to enforce said Note and Deed of trust then the actions is more than fraudulent in this case and depending on discovery there are these claims and other claims that would illuminate a plan and motivation and a scheme on part of the Defendants to operate and attempt to collect assets THAT IT HAS NO LEGAL RIGHT TO COLLECT OR ACQUIRE.

*Id.* at ¶ 68 (emphasis in original).

Plaintiff's third claim, "Violation of Fair Debt Collection Practices Act," alleges that SLS and MC engaged in unfair debt collection practices by foreclosing without proper legal authority and failing to respond to inquiries from plaintiff.[2]

Plaintiff's fourth claim, "Conversion," alleges that SLS and MC intentionally exercised dominion or control over plaintiff's "personal property rights (chattel) in her Note," by foreclosing on the Note without authority. *Id.* at ¶ 124.

---

[2] Plaintiff asserts five counts of FDCPA violations: (1) violation of 15 U.S.C. § 1692e against SLS for alleged false or misleading representations in communications due to its failure to show plaintiff that it was entitled to enforce the Note; (2) violation of 15 U.S.C. § 1692f against SLS for unfair practices in failing to show that it was entitled to enforce the Note and engaging in allegedly unfair means to collect the debt; (3) violation of 15 U.S.C. § 1692f(1) against SLS for unfair practices for attempting to collect on a debt without showing it had a right to do so; (4) violation of § 1692f(1) against SLS for attempting to collect on the Deed of Trust without showing it had a right to do so; (5) violation of 15 U.S.C. §§ 1692e(2), f, and f(1) against SLS and MC for failing to validate and misrepresenting the character, amount, or legal status of the alleged debt associated with the Note when attempting to conduct a Judicial Foreclosure.

Finally, plaintiff's fifth claim, "Breach of Good Faith and Duties of Care," alleges that SLS and MC "fail[ed] to act in a legal and reasonable manner, to which Plaintiff could surrender the property, with the assurances she sought." *Id.* at ¶ 135.

I. *Jurisdiction*

BNYM and SLS ask the Court to dismiss the claims against them for lack of jurisdiction. They argue that the claims are barred under the *Rooker-Feldman* doctrine and by claim preclusion.

Under the *Rooker-Feldman*[3] doctrine, federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. The basic premise of that doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Instead, the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts. *Id.*; *see* 28 U.S.C. § 1257.

A federal district court engages in a two-part inquiry to determine whether *Rooker-Feldman* deprives it of subject matter jurisdiction. First, the Court must determine whether the action contains a forbidden de facto appeal of a state court decision. *Noel*, 341 F.3d at 1158. A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* at 1164. If the

---

[3] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Court determines that the plaintiff is indeed bringing a de facto appeal of a state-court judgment, there is no subject matter jurisdiction over any issue that is "inextricably intertwined" with the state court decision from which the forbidden de facto appeal is brought. *Id.* at 1158. "The 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).

Here, plaintiff's first claim for relief seeks a declaratory judgment identifying the "lawful holder of the Note and proper beneficiary/Owner under the Deed of Trust." Compl. at ¶ 64. But the state court General Judgment of Foreclosure did just that, ruling that BNYM was the holder of the Note, which was secured by the Deed of Trust. Judgment of Foreclosure ¶¶ 3, 4, Doc. 18 Ex. G. The court also ruled that the Deed of Trust was a "valid first priority lien encumbering the Property" and "superior to any interest, lien, or claim of [Ms. Woodard] and any other party" and that BNYM was entitled to foreclose on the property. *Id.* at ¶ 6. Plaintiff's allegations in this action that defendants had no interest in any note, mortgage or deed of trust can only be understood as a challenge to those rulings and an attack on the validity of that state court judgment. Based on those allegations, plaintiff seeks relief from the state court's judgment, asking this Court to "unwind the judicial foreclosure sale." Compl. at ¶ 64. Granting the relief that plaintiff seeks "would require the district court to determine that the state court's decision[,]" which concluded that BNYM was entitled to foreclose and authorized the foreclosure sale, "was wrong and thus void." *Henrichs*

*v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007). Accordingly, the Court concludes that this action contains a forbidden de facto appeal of the state court's decision and that plaintiff's first claim is "inextricably intertwined" with that decision.

Plaintiffs remaining claims are similarly "inextricably intertwined" with the state court's decision in the Foreclosure Action. Plaintiff's claims for unjust enrichment, fraud, and conversion; FDCPA violations; and conversion are all based on plaintiff's allegation that defendants lacked authority or the right to foreclose or enforce the loan or failed to show their authority to enforce. That authority was shown and established in the state Foreclosure Action. Plaintiff's fifth claim for breach of the duty of good faith is based on defendants' failure to foreclose in a "legal and reasonable manner." Compl. at ¶ 135. Plaintiff does not identify the specific conduct that allegedly breached that duty, but the claim appears to refer to the same alleged lack of authority to foreclose and failure to show their authority to enforce the Note and foreclose on the deed of trust.

The Complaint does not allege that plaintiff did not receive notice of the Foreclosure Action, and the affidavits of service entered in that case show that she was personally served with the foreclosure complaint, motion for order of default, and motion for judgment. Instead, plaintiff alleges that she did not receive proper notice of the judicial foreclosure sale. That allegation is also contradicted by evidence in the state court record for the Foreclosure Action. The sheriff's writ asserts notice of the sale was mailed to plaintiff, posted in a newspaper of general circulation in the

county, and posted on the Oregon State Sheriff's Association website. Sheriff's Writ at 1, Doc. 18 Ex. H at 1.

In response to BNYM and SLS's motion, plaintiff now asserts that, despite Defendants' evidence that plaintiff was served notice of the Foreclosure Action and BNYM's motions in that action, the Court should "not presume any such fact in this case." Response at 3. Plaintiff is careful to clarify that she is not asserting, at this point, that BNYM "manufactured [the] affidavit[s][,]" but that she does not remember receiving service in the Foreclosure Action and the process servers may have and she "would like discovery of said issue to investigate further." *Id.* But, in the context of plaintiff's claims, this is not the kind of issue that could bring the action outside the scope of the *Rooker-Feldman* doctrine. None of plaintiff's claims are premised on defendant's failure to provide notice of the Foreclosure Action or even the Sheriff's Office's alleged failure to provide notice of the Foreclosure Sale. Therefore, none of the claims could be considered an action that "asserts as a legal wrong and allegedly illegal . . . omission by an adverse party[.]" *See Bell*, 709, F.3d at 897.

In sum, plaintiff's claims against BNYM and SLS are barred by the *Rooker-Feldman* Doctrine and must be dismissed.[4]

---

[4] Because these claims must be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine, the Court will not address BNYM and SLS's alternative argument that the claims against them are barred by claim preclusion.

## II. *Failure to State a Claim*

MC moves for dismissal of all claims against it for failure to state a claim.[5] MC contends that the Court should dismiss the claims without leave to amend because amendment would be futile.

MC also asks the Court to strike as untimely plaintiff's response to MC's motion. Plaintiff's response to MC's motion was due May 2, 2019, but she did not respond to the motion until May 23, 2019, when she filed a joint response to both motions to dismiss. Although the response to MC's motion was untimely, the Court declines to strike it because, even considering plaintiff's arguments, MC is entitled to dismissal of the claim against it.

### A. *Declaratory Judgment Claim*

The Declaratory Judgment Act permits a federal court to declare the rights of parties "to a case or actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). To support a claim for declaratory relief, the plaintiff must "allege facts that plausibly support his requested declaratory relief." *Hoa Van Nguyen v. Specialized Loan Servicing LLC*, No. 3:18-cv-00655-SI, 2018 WL 4059292, at *3 (D. Or. Aug. 24, 2018).

Plaintiff appears to seek a declaration that MC had "no economic or beneficial interest in any Note, mortgage, or deed of trust." Compl. at ¶ 54. However, plaintiff fails to allege that MC ever claimed an interest in the property. Accordingly, this claim must be dismissed.

### B. *Unjust Enrichment, Fraud, and Conversion*

---

[5] All three defendants move for dismissal for failure to state a claim upon which relief can be granted. Because the claims against BNYM and SLS are barred under the *Rooker-Feldman* doctrine and claim preclusion, the Court need not address whether the complaint states a claim against them and will focus on the claims asserted against MC.

Plaintiff's claim for "Unjust Enrichment, Fraud, and Conversion" is based on her allegation that defendants "do not have proper authority or right to enforce the note or deed of trust." Compl. at ¶ 66.

The elements of unjust enrichment are (1) the conferral of a benefit by plaintiff on the defendant, (2) awareness by the defendant that it has received the benefit, and (3) a showing that it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it. *Wilson v. Gutierrez*, 261 Or. App. 410, 414 (2014). Plaintiff alleges that defendants "would be unjustly enriched if [they] were allowed to foreclose and obtain the asset as [they] do not have the indicia of ownership in the Note." Compl. at ¶ 66. That conclusory allegation is insufficient to state a claim for unjust enrichment. Plaintiff has not alleged facts to demonstrate that MC would be "unjustly enriched" by the foreclosure of the Property or the foreclosure sale, nor has plaintiff alleged facts supporting the other elements of the claim.

The elements of common law fraud in Oregon are (1) a material misrepresentation that was false; (2) knowledge of falsity; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages caused by the reliance. *Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 352 (2011). A claim for fraud must be pleaded "with particularity" under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement demands that allegations of fraud be "specific enough to give defendants notice of the particular misconduct," which means that they "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

2003). Plaintiff has failed plead any of these elements, let alone with the particularity required under Rule 9(b).

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or. 658, 666 (1969). But, in claim two, plaintiff appears to allege that the foreclosure sale was a conversion of her property. *See* Compl. at ¶ 66. (the sale was "in effect converting [the] property for [defendants'] improper and unlawful benefit"). Because this claim concerned an alleged interference with land or real estate, rather than chattel, plaintiff fails to state a claim for conversion.

### C. *FDCPA Claim*

To state a claim for an FDCPA violation under sections 1692e and 1692f, a plaintiff must plead facts showing: (1) she was a consumer, (2) who was the object of a collection activity arising from consumer debt, (3) the defendant is a "debt collector" as defined by the FDCPA, and (4) the debt collector engaged in acts prohibited by the FDCPA. *Hernandez v. Green Tree Servicing LLC*, No. 2:14-cv-01438-CAS (AGRx), 2014 WL 2586932, at *2 (C.D. Cal. Jun. 9, 2014).

Plaintiff alleges the following facts concerning MC's involvement in this case:

> [MC] was acting as a Judgment Attorney in order to assist in collecting on the alleged debt owed to the alleged owner of the Note and is Defendant in this Case. MC initiated a judicial foreclosure trustee's sale that was held on August 03, 2018. Plaintiff requested a breakdown of the amount of the debt and who it is owed to both before and after the date of the judicial foreclosure sale. Neither MC or the alleged owner of the Note or alleged Service have ever sent any information pertaining to the amount of the debt owed or to whom it is owed and giving

> qualification to the Plaintiff's request for information, debt and who has right to enforce said debt.

Compl. at ¶ 29. Under "FDCPA Count 1," plaintiff also alleges that, at some point, MC "sent notice to Plaintiff that it and [SLS] and alleged Lender, [BNYM] was proceeding with the sale." Compl. at ¶ 85. She further alleges, under "FDCPA Count 5," that MC violated sections 1692e(2), f, and f(1) of the FDCPA by "fail[ing] to validate and misrepresent[ing] the character, amount, or legal status of the alleged debt associated with the Note when attempting to conduct a Judicial Foreclosure." Compl. at ¶ 118.

MC argues that plaintiff's FDCPA claims must be dismissed because it was not a "debt collector" within the meaning of the Act. As the United States Supreme Court recently observed, the Act contains both a "primary definition" and a "limited-purpose definition" of the term "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035–36 (2019). The primary definition provides that the term "means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The limited-purpose definition states: "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." *Id.*

In *Obduskey*, the Supreme Court considered the interplay of these definitions to determine whether a law firm carrying out a nonjudicial foreclosure was a "debt

> qualification to the Plaintiff's request for information, debt and who has right to enforce said debt.

Compl. at ¶ 29. Under "FDCPA Count 1," plaintiff also alleges that, at some point, MC "sent notice to Plaintiff that it and [SLS] and alleged Lender, [BNYM] was proceeding with the sale." Compl. at ¶ 85. She further alleges, under "FDCPA Count 5," that MC violated sections 1692e(2), f, and f(1) of the FDCPA by "fail[ing] to validate and misrepresent[ing] the character, amount, or legal status of the alleged debt associated with the Note when attempting to conduct a Judicial Foreclosure." Compl. at ¶ 118.

MC argues that plaintiff's FDCPA claims must be dismissed because it was not a "debt collector" within the meaning of the Act. As the United States Supreme Court recently observed, the Act contains both a "primary definition" and a "limited-purpose definition" of the term "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035–36 (2019). The primary definition provides that the term "means any person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The limited-purpose definition states: "For the purpose of section 1692f(6) of this title, [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." *Id.*

In *Obduskey*, the Supreme Court considered the interplay of these definitions to determine whether a law firm carrying out a nonjudicial foreclosure was a "debt

collector" subject to the FDCPA. 139 S. Ct. at 1033–36. It found that the "limited-purpose definition narrows the primary definition, so that the debt-collector-related prohibitions of the FDCPA (with the exception of § 1692f(6)) do *not* apply to those who ... are engaged in no more than security-interest enforcement." *Id.* at 1037 (emphasis in original). The Supreme Court then held that the defendant law firm fell within the FDCPA's limited-purpose definition when it initiated a nonjudicial foreclosure in the manner required by state law. *Id.* at 1037–39. Accordingly, the law firm was only subject to § 1692f(6) of the FDCPA. *Id.*

MC argues that *Obduskey* forecloses plaintiff's FDCPA claims against it because plaintiff's allegations demonstrate that MC "was engaged in no more than security-interest enforcement." MC's Mot. at 5. MC reads *Obduskey* too broadly. The Supreme Court's holding in *Obduskey* extends only to security-interest enforcers engaged in *nonjudicial* foreclosure proceedings *in a manner required by state law*. *See* 139 S. Ct. at 1039 (stating "we assume that the notices sent by [defendant] were antecedent steps required under state law to enforce a security interest" and reasoning that "we think the [FDCPA's] (partial) exclusion of 'the enforcement of security interests' must also exclude the legal means required to do so").

Here, MC was not a law firm retained solely to execute a nonjudicial foreclosure. Instead, MC represented BNYM in a judicial foreclosure proceeding, which involved executing a foreclosure sale. In *Obduskey*, the Supreme Court emphasized the limited application of its holdings to nonjudicial foreclosures, stating that "whether those who judicially enforce mortgages fall within the scope of the

primary definition is a question we can leave for another day." *Id.* (observing that, in its decision below, the Tenth Circuit had noted that the availability of a deficiency judgment is a potentially relevant distinction between judicial and nonjudicial foreclosures). Indeed, in *McNair v. Maxwell & Morgan P.C.*, 893 F.3d 680 (9th Cir. 2018), the Ninth Circuit observed that its decisions holding that actions taken to facilitate a nonjudicial foreclosure are not "debt collection" under the FDCPA, "do not . . . preclude FDCPA liability for an entity that seeks to collect a debt through a *judicial* foreclosure scheme that allows for deficiency judgments." *McNair*, 893 F.3d at 683 (emphasis in original). Further, plaintiff asserts FDCPA claims against MC for sending plaintiff a letter of intent to proceed with the foreclosure sale and for failing to respond to her request letters. Regardless of whether that conduct violates the FDCPA, MC does not argue that Oregon law required this conduct to enforce BNYM's security interest.

### D.   *Conversion*

Plaintiff alleges that MC "converted" plaintiff's property rights "in her Note for its own use" by "failing to demonstrate under Oregon's UCC, the FDCPA, Regulation X, and Oregon's foreclosure laws that it or its principal is the valid holder of Plaintiff's Note." Compl. at ¶¶ 124, 130, 131. But the Note is a document that belongs to the holder of the instrument as defined by the Uniform Commercial Code, not to plaintiff. *Nationstar Mortgage, LLC v. Peper*, 278 Or. App. 594, 596 (2016) (describing entitlement of the party in possession of a note indorsed in blank to foreclose).

Accordingly, plaintiff does not have a "property right" in the Note itself and, therefore, fails to state a claim for conversion.

### E. *Breach of the Covenant of Good Faith and Fair Dealing*

Every contract in Oregon contains an implied duty of good faith and fair dealing. *Swenson v. Legacy Health Sys.*, 9 P.3d 145, 149 (Or. Ct. App. 2000). The heart of each party's good faith and fair dealing obligation is the duty "to perform the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock v. D.R. Horton, Inc.-Portland*, 77 P.3d 1120, 1127 (Or. Ct. App. 2003).

This claim must also be dismissed because the Complaint fails to allege any contractual relationship between plaintiff and MC.

### F. *Type of Dismissal*

MC argues that the claims against it should be dismissed without leave to amend because amendment would be futile. A complaint is properly dismissed without leave to amend based on futility when "allegation[s] of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

On this record, the Court cannot say that plaintiff cannot possibly cure the deficiencies in the complaint by alleging additional facts. Accordingly, plaintiff shall have leave to amend her complaint.

## III. *Failure to Serve*

MC also argues that the claims against it should be dismissed for ineffective service because plaintiff has failed to serve MC with summons and the complaint.

Rule 4 provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court on motion or its own after notice to the plaintiff must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Here, plaintiff was required to complete service on MC by March 1, 2019. But, when MC filed its motion to dismiss in April 2019, plaintiff had not completed service and a review of the record indicates that plaintiff has not made proof of service to the Court. Accordingly, plaintiff has failed to comply with Rule 4.

Plaintiff argues that MC should not be dismissed for plaintiff's failure to serve because MC has had actual notice of the suit since the complaint was filed in December 2018. But without substantial compliance with Rule 4, actual notice will not provide personal jurisdiction over a defendant. *Direct Mail Specialists*, 840 F.2d at 688.

Because there is a reasonable prospect that plaintiff ultimately will be able to serve MC properly, the Court will quash service and exercise its discretion to extend the time for service.

## CONCLUSION

Defendants BNYM and SLS's Motion to Dismiss (doc. 17) is GRANTED. Because the claims against defendants BNYM and SLS are precluded by the *Rooker-*

*Feldman* doctrine, leave to amend would be futile. Thus, they are dismissed from this action with prejudice.

Defendant MC's Motion to Dismiss (doc. 11) is GRANTED in part and DENIED in part. Plaintiff's claims for declaratory judgment; unjust enrichment and fraud and conversion; conversion; and breach of good faith and duties of care are dismissed for failure to state a claim. Plaintiff shall have leave to amend her claims against MC within 14 days of this order, and shall have an additional 21 days after filing her amended complaint to complete service on MC. No further extensions of time will be granted. Plaintiff is warned that failure to comply with this order will result in dismissal of this action.

IT IS SO ORDERED.

Dated this 6th day of January 2020.

Ann Aiken
United States District Judge